## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN G. CONKLIN,** | : | **CIVIL ACTION NO. 1:06-CV-2245** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **WARRINGTON TOWNSHIP,** | : | |
| **REBECCA KNAUB, PAMELA LEE,** | : | |
| **GREGORY GETTLE, EDWIN A.D.** | : | |
| **SCHWARTZ, PAUL LUTZ, CHASE** | : | |
| **BANK OF TEXAS, SAXON** | : | |
| **MORTGAGE CO., EMC, MERITECH** | : | |
| **MORTGAGE CO., DEUTSCH BANK,** | : | |
| **LEON HALLER, DAVID DOE,** | : | |
| **SUE DOE,** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a § 1983 action instituted by plaintiff Stephen G. Conklin ("Conklin")

against the following groups of defendants: (1) Warrington Township and Rebecca

Knaub (collectively "the Warrington Township defendants"), (2) Pamela Lee,

Gregory Gettle, Sue Doe, and David Doe (collectively "the prothonotary

defendants"), (3) Edwin A.D. Schwartz, Paul Lutz, and Leon Haller (collectively

"the attorney defendants"), and (4) Chase Bank of Texas, Saxon Mortgage

Company, EMC Mortgage Corporation, Meritech Mortgage Company, and

Deutsche Bank[1] (collectively "the financial institution defendants"). Conklin seeks

---

[1] The caption of the instant case incorrectly refers to defendant Deutsche Bank as "Deutsch Bank." The correct spelling will be used throughout the duration of this opinion.

to hold defendants liable for:  (1) retaliating against him in violation of his First Amendment right to petition the government for redress of grievances, (2) violating his Fourteenth Amendment rights to substantive due process, procedural due process, and equal protection, (3) engaging in a civil conspiracy in violation of state law, and (4) committing fraud in violation of state law.  (Doc. 27 at 33, ¶¶ 11-15.)

Presently before the court are the motions to dismiss Conklin's amended complaint (Docs. 39, 41, 42, 44, 61, 71) filed by all defendants who have been served in this matter.[2]  The motions have been fully briefed and are ripe for disposition.

---

[2]  Defendant Deutsche Bank has not been served.  (See Doc. 28 (noting that a summons was issued as to defendant Deutsche Bank on February 1, 2007); see also Docs. 29-34, 46-49 (stating that waivers of service have been returned as to all defendants except Deutsche Bank)).  Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be effectuated upon each defendant "within 120 days after the filing of the complaint."  The rule further provides that, if such service is not completed, the court may "dismiss the action without prejudice as to that defendant" sua sponte "after notice to the plaintiff."  FED. R. CIV. P. 4(m).  Far greater than 120 days have passed since the filing of the amended complaint in the instant case on January 31, 2007.  (See Doc. 27.)  Accordingly, Conklin is hereby notified in accordance with Federal Rule of Civil Procedure 4(m) that all claims against defendant Deutsche Bank will be dismissed unless Conklin establishes good cause, on or before July 18, 2008, for his failure to effectuate service.

I.     __Factual Background__[3]

Conklin owns over one hundred acres of real property situated in Warrington

Township, York County, Pennsylvania (the "Warrington Property").  (Doc. 27 at 2,

¶ 16.)  In 1997, Conklin secured a mortgage on the Warrington Property, but by the

following year, he had fallen into arrears on this mortgage.  (Id. at 2, ¶¶ 17-18.)

Shortly thereafter, Conklin filed a bankruptcy petition.  (Id. at 2, ¶ 21.)

To alleviate some of his financial difficulties, Conklin sought to subdivide the

Warrington Property, anticipating that a sale of the most valuable three acres of

land would generate enough income to eliminate his arrearages.  (Id. at 2-3.)

Ultimately, Conklin hoped to develop a subdivision plan that would facilitate the

sale of parcels sufficient to satisfy his entire mortgage debt.  (Id.)

---

[3]  In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the complaint and in the public records provided
by defendants.  See infra Part II.  The court's recitation of the facts was rendered
more difficult because the amended complaint sets forth a maze of unrelated and
often conclusory allegations of wrongdoing by and conspiracy between the various
parties.  The statements contained herein reflect neither the findings of the trier of
fact nor the opinion of the court as to the reasonableness of the parties' allegations.

### A.   Alleged Wrongdoing by the Warrington Township Defendants

Conklin commissioned a survey of the Warrington Property, which he filed with Warrington Township along with a conditionally approved subdivision plan. (Id. at 4.)  When Conklin later attempted to move forward with the subdivision plan, he "was told by Warrington Township officials that he needed to 'get a fresh signature and stamp' and update his subdivision application."  (Id.; see also id. at 8 ("Rebecca Knaub . . . repeatedly emphasized to the plaintiff that he needed to get a fresh signature and a new stamp on his survey.")).  Conklin asserts that he had no legal obligation to "update" his application and that this "false directive thwarted [his] efforts to avoid a sheriff's sale and the subsequent loss of his real estate."  (Id. at 4.)  Conklin alleges, without explanation, that he did not "learn of the unlawful nature of the township's actions" until 2006.  (Id. at 3-5.)  He now asserts that the Warrington Township defendants' actions violated his rights to due process and equal protection.  (See id. ¶¶ 7-8.)

### B.   Issues Relating to Conklin's Bankruptcy Proceedings

Charles DeHart ("DeHart"), a non-party to the above-captioned action, was appointed trustee for Conklin's bankruptcy proceedings.  (Id. ¶ 22.)  At a point unspecified by the amended complaint, a payment plan was issued and approved by DeHart and Conklin's creditors.  (Id.)  The plan called for Conklin to make payments in an amount exceeding his pre-petition debt service by twenty-five percent.  (Id. ¶ 25.)

4

Conklin asserts a variety of claims in connection with the bankruptcy proceedings.  By way of example, Conklin alleges that DeHart failed to notify him of deficiencies in the bankruptcy plan, improperly suspended payments, purposefully failed to secure an adversarial hearing when "significant resources remained in controversy," improperly sought to modify the bankruptcy plan, and deliberately made misrepresentations to the bankruptcy court about Conklin's financial abilities.  (See id. ¶¶ 22, 24-27, 35-38.)

Conklin also avers that defendant Leon Haller ("Haller"), an attorney, colluded with DeHart to benefit an unidentified mortgagor of Conklin's property whom Haller was representing.  (Id. at 6, ¶ 28.)  Defendant Paul Lutz ("Lutz"), Conklin's personal attorney during the bankruptcy proceedings, allegedly engaged in fraud with Haller to utilize Conklin's status as a bankrupt "to unlawfully take his money and force him into an even more tenuous financial situation."  (Id. at 6.)  For example, Lutz requested that a temporary restraining order protecting Conklin's interests in the Warrington Property be lifted, allegedly in an effort to prevent Conklin from meeting his financial obligations.  (Id. ¶¶ 40-41.)  Furthermore, at Lutz's instruction, Conklin issued six checks to Haller totaling in excess of $14,000, and one check to Lutz in the amount of $2,050.  (Id. at 7, ¶¶ 10, 31.)  Although this money was to be placed toward the mortgage debt on the Warrington Property, Conklin has been unable to trace the destination of the funds and suggests that Lutz and Haller engaged in wrongdoing with respect to the funds.  (Id. at 7, ¶ 10.)  Conklin alleges that in October of 2004, the bankruptcy judge "expressly referred to

the appearance of 'collusion'" between Lutz and Haller.  (Id. at 6-7, ¶ 37.)

Thereafter, on November 18, 2004, the judge allegedly dismissed his case "for lack

of time" without investigating the alleged collusion.  (Id. ¶ 38.)  Conklin alleges that

he did not learn the extent and nature of Haller and Lutz's misconduct until late

November 2004.  He now asserts that their actions constitute a civil conspiracy and

were fraudulent and intended to deprive him of his property without due process of

law.[4]  (Id. ¶¶ 44, 53.)

### C.    Alleged Misdeeds by the Financial Institution Defendants

Conklin alleges that defendant Chase Bank of Texas ("Chase"), the mortgage

holder at the time Conklin fell into arrears, accepted his plan to subdivide the

Warrington Property as a way to satisfy his mortgage debt.  (Id. at 3-4.)  However,

Conklin suggests that Chase acquiesced only because he "was dangerously close to

exposing . . . unlawful predatory financing practices."  (Id. at 3 (internal citation

omitted)).  Conklin further alleges that he "has never been given any figures as to

what he owes, nor any accounting as to what he paid."  (Id. at 6; see also id. at 2,

¶¶ 23, 33.)

Conklin also alleges that the financial institution defendants improperly

transferred and assigned the mortgage, note, and mortgage service contract for the

Warrington Property during the pendency of his bankruptcy proceedings without

---

[4]  Conklin alleges that Lutz and Haller became "cloaked with the authority of
the state" because they used Conklin's "position as a bankrupt in an unlawful
manner."  (Doc. 27 ¶ 51.)

informing him.[5]  (Id. at 5, ¶¶ 46, 48, 58.)  These transactions and other unidentified

efforts by the financial institution defendants allegedly "made it impossible for him

to be able to make payments and to be able to account for those innumerable

payments he had already made."  (Id. at 5.)  Furthermore, Conklin claims that

Chase instituted foreclosure proceedings on the wrong property.  (Id.; see id. ¶ 47.)[6]

### D.    Alleged Difficulties with the York County Prothonotary's Office

Conklin also alleges that individual employees of the York County

Prothonotary's Office, namely Prothonotary Pamela Lee ("Lee"), Deputy

Prothonotaries "David" Doe ("David") and "Sue" Doe ("Sue"), and Solicitor

Gregory Gettle ("Gettle"), deprived Conklin of his rights to due process and equal

protection under the Fourteenth Amendment.  (Id. ¶¶ 9, 50, 55-56.)  Conklin alleges

that these individuals intentionally failed to "docket[] properly filed documents,

which if properly filed, would have resulted in plaintiff's right to a hearing

regarding the unlawful conduct of the defendant Lutz."[7]  (Id. ¶ 9; see also id. ¶ 50.)

---

[5]  Conklin alleges that he did not learn of the improper assignments until
February of 2006.  (Doc. 27 ¶ 46.)

[6]  Conklin avers that, like the attorney defendants, the financial institution
defendants used his status as a bankrupt "in an unlawful manner (causing them to
become cloaked with the authority of the state)" to acquire his property.  (Doc. 27
¶ 51.)

[7]  Conklin vaguely alleges that defendant Edwin A.D. Schwartz, an attorney
for Lutz and Haller, was involved in the prothonotary defendants' decision not to
docket the aforementioned documents.  (Doc. 27 ¶¶ 9, 50.)

The amended complaint also details several exchanges between Conklin and the prothonotary defendants that occurred in January 2007.  (See id. ¶¶ 61-131.) After learning that "unlawful efforts were under way in the York County Prothonotary's office to take his home and land away,"[8] Conklin went to the prothonotary's office to review the docket in his case numbered 2006-SU-433-YO6. (Id. ¶¶ 61, 63-65.)  On January 24, 2007, Conklin reviewed a copy of the docket in that case which did not reflect an entry of default judgment against him.  However, when Conklin returned to the prothonotary's office five days later, he was informed that a praecipe for default judgment had been entered by defendant EMC Mortgage Corporation ("EMC") in the amount of $422,047.35.  (Id. ¶¶ 61-75.)  When Conklin inquired about the date of this filing, a non-defendant deputy prothonotary stated that the praecipe for default judgment had been filed on January 19, 2007.  After Conklin indicated that the praecipe was not reflected on the docket he had reviewed on January 24, 2007, the deputy prothonotary responded that it must have been docketed on January 25, 2007.[9]  (Id. ¶¶ 75-78, 87.)  Conklin then filed several documents, including a praecipe for non pros against EMC, before leaving the prothonotary's office.  (Id. ¶ 79.)

---

[8] Conklin alleges that these unlawful efforts were undertaken on behalf of defendant EMC Mortgage Corporation.  (Doc. 27 ¶ 62.)

[9] Conklin's attorney later confirmed via telephone that the praecipe for default judgment had been filed on January 19, 2007 and that the typical time lapse between the filing of a document and its appearance on the docket was approximately "one or two days."  (Doc. 27 ¶¶ 80-82.)

Conklin returned to the prothonotary's office the following day to retrieve a certified copy of the docket. (Id. ¶¶ 83-85.) As he was exiting the office, Conklin told Lee that he would be back. She purportedly responded "in a snide and condescending manner" with, "I'm sure you will." (Id. ¶ 88.) Shortly thereafter, Conklin examined the certified docket and discovered that his praecipe for non pros did not appear thereon. (Id. ¶ 90.) Conklin telephoned the prothonotary's office and asked to speak directly to Lee. When his requests were denied, he spoke to David, who informed him that the praecipe was being returned because of a defect, the exact nature of which was unknown to David. (Id. ¶¶ 89-102.) After David repeatedly denied Conklin's requests to speak directly with Lee, Conklin was transferred to Sue, who explained that it was she who had determined that his praecipe was defective. Nonetheless, Sue allegedly did not reveal the exact nature of the defect. (Id. ¶¶ 99-114, 128.) Sue also denied Conklin's requests to speak with Lee, stating that Lee was not familiar with his case. (Id. ¶¶ 106-110.) When the conversation between Sue and Conklin became heated, Sue informed Conklin that further inquiries should be directed to Gettle. (Id. ¶¶ 114-127.) In response, Conklin mentioned that he was suing Gettle and Lee. (Id. ¶ 126.) Conklin asserts that the prothonotary defendants' conduct in January of 2007 was motivated by a desire to violate his due process and equal protection rights and to retaliate against him for filing the original complaint in the above-captioned action against Gettle and Lee. (Id. ¶¶ 10a, 129.)

### E.   Conklin's Requested Relief

Conklin seeks both legal and equitable relief as a result of the defendants' actions.  He requests compensatory and punitive damages from all defendants.  He also seeks an injunction "prevent[ing] any proceedings to sell his property until there is a resolution of who owes what to who [sic] and whether or not the various defendants engaged in predatory financial and lending practices which still prevents them from providing Mr. Conklin an accounting."  Finally, he seeks as an injunction "to prevent the Prothonotary's office of York County from denying him his procedural due process rights and . . . taking away his interest in property."  (Id. ¶¶ 12-15.)

## II.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory

Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." Sershen v.

Cholish, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting

Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must

present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P.

8(a) (stating that the complaint should include "a short and plain statement of the

claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, ___

U.S. ___, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to

"raise a right to relief above the speculative level"); Victaulic Co. v. Tieman, 499

F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure

to state a claim if it "contain[s] either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under *some* viable legal

theory." Montville Twp. v. Woodmont Builders LLC, No. 05-4888, 2007 WL 2261567,

at *2 (3d Cir. 2007) (quoting Twombly, ___ U.S. at ___, 127 S. Ct. at 1969).  Under this

liberal pleading standard, courts should generally grant plaintiffs leave to amend

their claims before dismissing a complaint that is merely deficient.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).  In addition, complaints alleging fraud must satisfy the

heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b).

See Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity.").

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method for vindicating violations of other federal laws.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the action *sub judice*, Conklin alleges that defendants violated his Fourteenth Amendment rights to due process and equal protection and retaliated against him in violation of the First Amendment.  Conklin also asserts state law claims of fraud and civil conspiracy.  The four defendant groups maintain distinct defenses to these claims, which the court will discuss below.

## A.      Financial Institution and Attorney Defendants

The financial institution and attorney defendants contend that Conklin's § 1983 claims against them should be dismissed because they did not act under color of state law.[10]  "The color-of-state law requirement is a threshold issue; 'there is no liability under § 1983 for those not acting under color of law.'"  Bailey v. Harleysville Nat'l Bank & Trust, 188 F. App'x 66, 67 (3d Cir. 2006) (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (stating that the "under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful").

In the instant case, the financial institution and attorney defendants are clearly private parties rather than officials or employees of the state.  To successfully assert § 1983 claims against these defendants, Conklin must establish that despite their status as private parties, they nonetheless engaged in state action. Where a § 1983 action is alleged against private parties, the plaintiff must satisfy the state action requirement by averring that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  In other words, "constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."  See O'Neil v. Beck, No. 04-2825,

---

[10]  For purposes of the instant motions, the remaining defendants do not argue that they were not "acting under color of state law."

2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (emphasis in original) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

Neither the Supreme Court nor the United States Court of Appeals for the Third Circuit has articulated an "all-inclusive test" for use in determining whether a private party's conduct may be fairly attributed to the state. See Magill v. Avonworth Baseball Conference, 516 F.2d 1328, 1332 (3d Cir. 1975) (citing Reitman v. Mulkey, 387 U.S. 369, 378 (1967)); see also Imperiale v. Hahnemann Univ., 776 F. Supp. 189, 195 (E.D. Pa. 1991). Instead, "the presence or absence of state action must be determined on a case-by-case basis." Magill, 516 F.2d at 1332. The Court has, however, articulated a number of inquiries that may assist courts in determining whether an individual was acting under color of state law. Conklin references two of these inquiries in the instant case, namely, (1) "whether there is a symbiotic relationship between the state and the private actor," Smith v. Wambaugh, 29 F. Supp. 2d 222, 226 (3d Cir. 1998) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982)), and (2) "whether there is a 'sufficiently close nexus' between the state and a private actor," id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Conklin also alleges that the moving defendants are state actors because they "cloaked themselves with the authority of the state" by participating in his bankruptcy proceeding. The court will discuss Conklin's symbiotic relationship, close nexus, and bankruptcy proceeding arguments *seriatim*.

1.    **Symbiotic Relationship**

To establish a symbiotic relationship between the state and a private actor, a plaintiff must prove that "the government has insinuated itself into a position of interdependence with the defendant." Brown v. Philip Morris, Inc., 250 F.3d 789, 803 (3d Cir. 2001). Here, Conklin argues that there is a symbiotic relationship between the state and the moving defendants because the moving defendants engage in highly regulated professions. However, the Third Circuit has held that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." Bailey, 188 F. App'x at 68 (quoting Jackson, 419 U.S. at 350). This holding has been specifically extended to both financial institutions and attorneys. See id. (holding that despite the intensive governmental regulations imposed upon financial institutions, such institutions are not state actors "even when their complained-of actions have been explicitly authorized by the state"); Henderson v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980) (citing Jackson, 419 U.S. at 355) (finding that an attorney does not become a state actor for purposes of § 1983 merely because he or she is licensed by the state, engaged in a "highly regulated profession," or an officer of the court); Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (citing Polk County v. Dodson, 454 U.S. 312, 318 (1981)) (same). In the instant case, Conklin's bald assertion that the moving defendants are engaged in highly regulated professions, standing alone, is woefully insufficient to establish state action. There is simply no

15

basis in the *allegata* to establish a symbiotic relationship between the state and the moving defendants.

### 2.   Close Nexus

To establish a close nexus between the state and a private actor, a plaintiff must prove that "the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Sullivan, 526 U.S. at 52. In the instant case, Conklin argues that there is a close nexus between the state and the moving defendants because the moving defendants conspired with state actors. Under certain circumstances, a plaintiff may satisfy the "close nexus" inquiry by establishing that a private party entered into a conspiracy with a state actor to deprive the plaintiff of his or her constitutional rights. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) ("Private persons, jointly engaged with state officials in [a] prohibited action, are acting 'under color' of law for purposes of [§ 1983].");
Showalter v. Brubaker, No. 07-2950, 2008 WL 2397528, at *3 (3d Cir. June 13, 2008);
Adams v. Teamsters Local 115, 214 F. App'x 167, 172 (3d Cir. 2007). To establish such a conspiracy, a plaintiff must show that "the private party was a willful participant who jointly engaged with a state official in the challenged action."
Showalter, 2008 WL 2397528, at *3 (citing Dennis v. Sparks, 449 U.S. 24, 27-28 (1980)). Accordingly, "[a] private action is not converted into one under color of state law merely by some tenuous connection to state action." Id. (quoting Groman,

16

2007) (stating that "[s]ignificant concerted action . . . must exist between state actors and a private individual" before a conspiracy sufficient to transform the private individual's conduct into state action may be found).

In the instant case, Conklin's allegations of conspiracy fall far short of the mark. Conklin alleges only that certain non-state actor defendants conspired with other non-state actor defendants, namely, that the financial institution defendants conspired with the attorney defendants. (See Doc. 27 ¶¶ 59-60 (stating that the actions of "the financial institutions along with the defendants Lutz and Haller" constitute a fraud and civil conspiracy in violation of state law.) Conklin fails to allege any conduct by a state actor in furtherance of the conspiracy.[11] Accordingly,

---

[11] Even if the court were to construe Conklin's complaint as asserting that the moving defendants conspired with Gettle and/or DeHart (see Doc. 27 ¶ 9 (alleging that Schwartz and Gettle "unlawfully agreed together and unlawfully acted to deprive [Conklin] of his procedural due process rights"); id. ¶¶ 40, 42 (alleging that DeHart was aware of the unlawful activities allegedly engaged in by Lutz and Haller), Conklin's state action argument would still fail. This court has previously held that an attorney's role as a solicitor for a municipality does not automatically render him or her a state official. Spradlin v. Borough of Danville, No. 02-2237, 2005 WL 3320788, at *3 (M.D. Pa. Dec. 7, 2005); see also O'Hanlon v. City of Chester, Nos. 00-0664, 00-5617, 2002 WL 393122, at *4 (E.D. Pa. Mar. 12, 2002). Accordingly, Conklin has failed to establish that Gettle is a state actor simply because of his role as the York County solicitor. Nor has Conklin offered any support for the proposition that DeHart should be considered a *state* actor merely because he served as a bankruptcy trustee, an official of the *federal* government. See Rourke v. United States, 744 F. Supp. 100, 103 (E.D. Pa. 1990) ("Liability [under § 1983] will not attach for action taken under color of federal law.").

the court finds that the state action requirement is not satisfied by Conklin's

patently insufficient allegations of conspiracy.[12]

### 3. __Bankruptcy Proceedings__

Conklin argues that the financial institution and attorney defendants are

state actors because they used his "position as a bankrupt in an unlawful manner

(causing them to become cloaked with the authority of the state), so that they could

---

[12] Assuming *arguendo* that Conklin had alleged that the moving defendants
conspired with a state actor, Conklin's amended complaint would not survive the
instant motions to dismiss.  In a conspiracy claim, a plaintiff "must make specific
factual allegations of combination . . . or understanding among all or any of the
defendants to plot, plan, or conspire to carry out the alleged chain of events."
Sershen v. Cholish, No. 07-1011, 2008 WL 598111, at *7 (M.D. Pa. Feb 29, 2008);
Pellegrino Food Prods. Co., Inc. v. City of Warren, 136 F. Supp. 2d 391, 409 (W.D.
Pa. 2000) (same); see also Garcia v. Police Officer John Doe No. 1-4, No. 01-2449,
2003 WL 22358442, at *3 (E.D. Pa. Sept. 12, 2003) (stating that to survive a motion to
dismiss a plaintiff must "plead facts that touch on the period and object of the
conspiracy and some actions taken in furtherance of the conspiracy").  "Only
allegations of conspiracy which are particularized, such as those addressing the
period of the conspiracy, the object of the conspiracy, and certain other action of
the alleged conspirators taken to achieve that purpose will be deemed sufficient."
Lucarelli v. Norton, No. 06-53, 2006 WL 709319, at *4 (M.D. Pa. Mar. 17, 2006) (citing
Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999).  "Mere incantation
of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" the
state action requirement.  Garcia, 2003 WL 22358442, at *4; see also Abbott v.
Latshaw, 164 F.3d 141, 148 (3d Cir. 1998) (stating that "conclusory allegations of
concerted action" without "facts actually reflecting joint action" are insufficient to
satisfy the state action requirement).
    In the instant case, Conklin's allegations of conspiracy amount to nothing
more than "conclusory allegations of concerted action" without factual support
therefor.  See Abbot, 164 F.3d at 148.  Conklin fails to allege that the supposed co-
conspirators engaged in a meeting of the minds regarding a desire to conspire
against him.  While he avers that the purpose of the purported conspiracy was to
deprive him of his property rights, Conklin neither alleges with specificity the
period of the conspiracy nor any actions taken by the supposed co-conspirators in
furtherance thereof.  See Lucarelli, 2006 WL 709319, at *4.

acquire his property." (Doc. 27 ¶ 51; see also id. ¶ 52 ("The defendants by using and exploiting plaintiff's position as a federal bankruptcy petitioner cloaked themselves with the authority of the government and as such are state actors for the purpose of 42 U.S.C. § 1983.")).  Conklin cites no authority for the proposition that a private party's involvement in a bankruptcy proceeding transforms the party into a state actor, and the court is aware of none.  As our sister court in the Eastern District of Pennsylvania has explained:

> [A] Defendant's role in the [Plaintiff's] bankruptcy proceedings cannot transform it into a state actor because, at most, it shows that [the] Defendant "acted together with or gained significant aid from" the federal bankruptcy courts.  Because § 1983 covers only state, not federal, actors, actions in concert with the federal government cannot create the basis for a § 1983 claim.  Furthermore, we find no authority supporting that a *Bivens* claim can lie for a debtor against a creditor by virtue of his participation in that debtor's bankruptcy proceedings.

Mathews v. Washington Mutual Bank, FA, No. 05-100, 2006 WL 2380460, at *9 n.17 (E.D. Pa. Aug. 14, 2006) (internal citation omitted).  Accordingly, the court finds no merit in Conklin's vacuous attempt to satisfy the state action requirement by invoking the moving defendants' involvement in his bankruptcy proceeding.

In summary, Conklin has failed to establish the requisite state action via either the symbiotic relationship test or the close nexus inquiry.  Moreover, he has failed to proffer any support for the proposition that an individual's involvement in a *federal* bankruptcy proceeding may satisfy the *state* action requirement.  Accordingly, all § 1983 claims against the financial institution and attorney

defendants are dismissed.  Leave to amend is denied as futile.  See Grayson, 293

F.3d at 108.

### B.    Prothonotary Defendants

The prothonotary defendants assert that because they are public officials, the

doctrine of quasi-judicial immunity insulates them from suit.  In the alternative,

they argue that they did not violate Conklin's clearly established rights and should

be shielded by qualified immunity.  The court will address these arguments

*seriatim.*

### 1.    Quasi-Judicial Immunity[13]

In certain circumstances, the doctrine of quasi-judicial immunity insulates

from suit those public officials who "perform functions closely associated with the

judicial process."  Locke v. Caldwell, No. 07-2272, 2008 WL 2096812, at *3 (E.D. Pa.

May 16, 2008) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985)).  The

dispositive inquiry in determining whether to afford an individual quasi-judicial

immunity is "the nature of the function performed, not the identity of the actor who

performed it."  Tucker v. I'Jama, 173 F. App'x 970, 971 (3d Cir. 2006).  In other

words, quasi-judicial immunity attaches when a "public official's role is

'functionally comparable' to that of a judge,"  Dotzel v. Ashbridge, 438 F.3d 320, 325

---

[13]  Quasi-judicial immunity is absolute immunity.  See Dotzel v. Ashbridge, 438 F.3d 320, 324 n.1 (3d Cir. 2006).  The defendant bears the burden of establishing a right to absolute immunity.  See Waris v. Frick, No. 06-5189, 2007 WL 954108, at *6 n.8 (E.D. Pa. Mar. 28, 2007) (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993)).

(3d Cir. 2006) (quoting <u>Hamilton v. Leavy</u>, 322 F.3d 776, 785 (3d Cir. 2003)), or when a public official acts "pursuant to court directive," <u>see</u> <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 460 (3d Cir. 1969) (basing the aforementioned rule upon the "manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control"); <u>see also</u> <u>Alexander v. McMonagle</u>, No. 99-1298, 1999 WL 1210844, at *1 (E.D. Pa. Dec. 9, 1999) ("Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit.").

A public official's role is functionally comparable to that of a judge when he or she is required to "exercise a discretionary judgment" akin to that of a judge. <u>Stacey v. City of Hermitage</u>, 178 F. App'x 94, 103 n.5 (3d Cir. 2006) (quoting <u>Antoine v. Byers & Anderson, Inc.</u>, 508 U.S. 429, 436 (1993)). "Court employees who exercise no discretion in their positions, that is, those who perform purely ministerial duties," are often unprotected by quasi-judicial immunity. <u>Locke</u>, 2008 UL 2096815, at *3; <u>see also</u> <u>Walton v. Denlinger</u>, No. 05-5170, 2007 WL 4615960, at *3 (E.D. Pa. Dec. 21, 2007). Examples of such ministerial tasks include the docketing and filing of papers. <u>See, e.g.</u>, <u>Denlinger</u>, 2007 WL 4615960, at *3; <u>Wright v. O'Nembo</u>, No. 06-2251, 2006 WL 3857487, at *2 (E.D. Pa. Dec. 28, 2006); <u>Brightwell v. Miller</u>, No. 92-2649, 1993 WL 429083, at *2 (E.D. Pa. Oct. 21, 1993); <u>Allen v. Dorsey</u>, 463 F. Supp. 44, 47 (E.D. Pa. 1978); <u>see also</u> <u>Stacey</u>, 178 F. App'x at 103 (citing the Pennsylvania Rules of Appellate Procedure for the proposition that the filing of a notice of appeal is a non-discretionary function of the prothonotary); <u>Tucker</u>, 173 F. App'x at 971-72

21

(citing the New Jersey Rules of Court for the proposition that filing documents is a non-discretionary function).  Nonetheless, numerous courts have held that certain tasks performed by prothonotaries and court clerks are shielded by quasi-judicial immunity.  See Marcedes v. Barrett, 453 F.2d 391 (3d Cir. 1971) (holding that a prothonotary who allegedly refused to send the plaintiff a requested transcript was acting as a "quasi-judicial official"); Lockhart, 411 F.2d at 460 (holding that a prothonotary who was acting under court direction was immune from suit); Locke, 2008 WL 2096815, at *3 (holding that a prothonotary who determined that a motion for reconsideration was not timely filed was performing a discretionary function and was immune from suit); see also Denlinger, 2007 WL 4615960, at *3 (using "court clerks and prothonotaries" as examples of individuals who may be entitled to quasi-judicial immunity); O'Nembo, 2006 WL 3857487, at *2 (same); Hurst, No. 06-146, 2006 WL 1328729, at *6 (D. Del. May 16, 2006) (same); McKnight v. Baker, 415 F. Supp. 2d 559, 563 (E.D. Pa. 2006) (same).

In the instant case, Conklin alleges that the prothonotary defendants violated his constitutional rights by failing to docket in a timely fashion EMC's praecipe for default judgment and by returning as defective his praecipe for non pros.  Without the benefit of a fully-developed record, the court cannot determine whether the prothonotary defendants were performing discretionary or non-discretionary tasks when they made the document management decisions at issue.  Nor can the court ascertain whether any of the relevant actions were undertaken pursuant to court

directive.  Accordingly, the issue of quasi-judicial immunity is more appropriately reserved for resolution at summary judgment.

### 2. **Qualified Immunity**

The doctrine of qualified immunity provides that government officials performing "discretionary functions" are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  This doctrine provides not only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  To gain the protection of the doctrine, the defendant mush show either that:   (1) the plaintiff has not demonstrated "a deprivation of an actual constitutional right," or (2) the right at issue was not "clearly established at the time of the alleged violations."  Conn v. Gabbert, 526 U.S. 286, 290 (1999); see also Doe v. Groody, 361 F.3d 232, 237-38 (3d Cir. 2004); accord Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005) (noting that six Courts of Appeals have ruled that the first step in qualified immunity analysis is whether a constitutional violation has occurred).  A right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.

In the instant case, Conklin alleges that defendants violated his Fourteenth Amendment rights to due process and equal protection and retaliated against him

in contravention of the First Amendment.  The court will address these claims *seriatim*.

### a.      Fourteenth Amendment Due Process

The Due Process Clause offers procedural and substantive protections against deprivations of "life, liberty, or property."  U.S. CONST. amend. XIV, § 1; see Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004).  The threshold issue of due process analysis is whether a plaintiff has been deprived of one of these protected interests.  Id.  Here, Conklin alleges that he was deprived of the Warrington Property without due process of law.  However, Conklin fails to allege that the prothonotary defendants' actions caused such deprivation.

It is firmly established that "[n]o constitutional claim exists under the Fourteenth Amendment unless the plaintiff can show that state action caused some injury."  Wrench Transp. Servs., Inc. v. Bradley, 136 F. App'x 521, 523 (3d Cir. 2005) (citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989)).  "This causation requirement is explicit in the constitutional text, which forbids any state to '*deprive* any person of life, liberty, or property, without due process of law.'"  Id.  (quoting U.S. CONST. amend. XIV, § 1) (emphasis in original).  The causation requirement in § 1983 actions mirror that of tort law.  Therefore, to establish the causation element of a § 1983 claim, a plaintiff must prove not only that the defendant's actions were a but-for cause of the plaintiff's injuries but also that they were a proximate cause.  Egervary v. Young, 366 F.3d 238, 246-47 (3d Cir. 2004).  Here, Conklin fails to allege that the prothonotary defendants' actions were a

24

but-for cause of his purported constitutional injury.  He alleges that the

prothonotary defendants delayed in docketing EMC's praecipe for default judgment

and improperly refused to docket his praecipe for non pros.  However, he does not

allege that but-for either of these actions he would not have been deprived of the

Warrington Property.  In fact, were Conklin to make such an allegation, the court

finds that it would be contravened by the public records provided by defendants.[14]

Conklin's praecipe for non pros was premised on EMC's alleged failure to file

an "original verification to the Complaint in accordance with Order of the York

County Court of Common Pleas dated the 28th day of December, 2006."  (Doc. 42-3,

Ex. M.)  That order directed EMC to file a verification on or before January 17, 2007.

(See id., Ex. A.)  EMC complied with the order by filing a verification on January 10,

2007.  (See id., Ex. B.)  Conklin's praecipe for non pros was premised on incorrect

facts; had it been docketed properly, it would not have led to the relief Conklin

sought.  Accordingly, the prothonotary defendants' failure to file the document

neither prejudiced Conklin nor deprived him of his property without due process of

law.

Similarly, Conklin suffered no prejudice from the belated docketing of EMC's

praecipe for default judgment.  Despite the alleged delay, Conklin was able to file in

---

[14]  Although the court is generally limited to the face of the complaint in
deciding motions to dismiss, the court "may also consider matters of public record,
orders, exhibits attached to the complaint and items appearing in the record of the
case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir.
1994); see also supra note 3 & Part II.

a timely manner both a notice of appeal to the Pennsylvania Superior Court and a motion to strike the default judgment.  (See id., Ex. I.)  Therefore, the chronology of the prothonotary defendants' docketing activities did not affect Conklin's legal rights.  Accordingly, these actions cannot form the basis of a due process claim.

Having found that the public records provided by the defendants foreclose the possibility that Conklin may satisfy the causation element of his due process claim, the court will grant the prothonotary defendants' motion with respect to this claim.  Leave to amend is denied as futile.  See Grayson, 293 F.3d at 108.

### b. **Fourteenth Amendment Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment directs that all individuals similarly situated be treated alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Two theories exist upon which a plaintiff may assert an equal protection claim.  The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as gender or race.  See, e.g., id.; McLaughlin v. Florida, 379 U.S. 184, 192 (1964).  In contrast, under the class-of-one theory, a plaintiff may have an equal protection claim even absent protected-class status if he or she alleges irrational and intentional differential treatment when compared with similarly situated individuals.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Because Conklin fails to allege that he is a member of a protected class, the court will evaluate his claims using a class-of-one theory.

To assert a class-of-one claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Mere allegations of mistreatment without identification of similarly situated individuals who were treated differently will not support an equal protection claim.  See Hudson v. Coxon, 149 F. App'x 118, 121 (3d Cir. 2005) (upholding dismissal of equal protection claims for failure to allege differential treatment of others similarly situated); Pollock v. City of Phila., No. 06-4089, 2007 WL 576264, at *4 (E.D. Pa. Feb. 16, 2007) (dismissing plaintiff's equal protection claim despite his allegations of racial harassment because he failed to allege that he received treatment different from that given to other individuals).  When alleging the existence of similarly situated individuals, a plaintiff "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.  Young v. New Sewickley Twp., 160 F. App'x 236, 266 (3d Cir. 2006) (citing Evancho, 423 F.3d at 354-55).  Instead, the plaintiff must allege "occasions or circumstances" or differential treatment.  Young, 160 F. App'x at 266.

In the instant case, Conklin fails to allege that similarly situated individuals were treated differently.  He makes no mention of any *specific* situation in which the prothonotary defendants handled documents differently than they had in his case.  Nor does he discuss any instances in which litigants were treated differently

than he was when visiting the prothonotary's office.  Conklin's allegations of equal protection violations are little more than "bald assertions" that do not allege "occasions and circumstances" of differential treatment.  Young, 160 F. App'x at 266.  Accordingly, the court will grant the prothonotary defendants' motion to dismiss with respect to Conklin's equal protection claim.

To the extent that Conklin believes that he can allege a *specific* instance or instances in which similarly situated individuals were treated differently than he was by the prothonotary defendants, the court will permit Conklin to seek leave to amend to add equal protection claims against these defendants.  Any motion for leave to amend shall include the proposed amendments and shall be accompanied by a brief in support thereof.  Said brief shall include citations to applicable and controlling law demonstrating the validity of the added equal protection claims given the proposed amendments.

### c.    First Amendment Retaliation

In order to establish a retaliation claim under the First Amendment, a plaintiff must prove:  (1) conduct or speech protected by the First Amendment, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) a causal link between the constitutionally protected conduct or speech and the retaliatory action.  Thomas v. Independence Twp., 463 F.3d 285, 296 (2006); see also, e.g., Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Here, Conklin satisfies the protected activity requirement by reliance upon

28

the original complaint in the instant action.  See Brennan v. Norton, 350 F.3d 399,

417 (3d Cir. 2003) (stating that filing a federal complaint qualifies as petitioning the

government and is, therefore, protected so long as the complaint is not frivolous).

He alleges that the retaliatory actions engaged in by the prothonotary defendants

were the aforementioned document management errors.[15]  However, Conklin fails

to allege that the prothonotary defendants' actions were caused by his protected

activity.

　　　To establish the causation element of a retaliation claim, a plaintiff must

prove that his or her participation in a protected activity "played some substantial

role" in motivating the adverse employment action.  Meenan v. Harrison, Civ A.

No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D. Pa. Apr. 13, 2006).  The temporal

proximity of a retaliatory action to a plaintiff's involvement in protected activity is

probative of the causation element of a retaliation claim.  Estate of Smith v.

Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  However, a protected activity and a

retaliatory action must be "very close" in time to prove causation.  See Clark

County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (stating that a three month

period between a protected activity and a retaliatory action did not suggest

causation).  In the action *sub judice*, Conklin's complaint dated November 20, 2006

was followed by alleged retaliatory actions on January 19, 2007 and January 25,

---

　　　[15] The court takes no position on whether these allegations are sufficient to
satisfy the retaliatory action element of the prima facie case for First Amendment
retaliation.

2007. Hence, the difference in time between Conklin's protected activity and the corresponding retaliatory actions is approximately two months. The court finds that the temporal proximity between Conklin's protected activity and the subsequent retaliatory actions is not so unduly suggestive as to give rise to an inference of causation. See Breeden, 532 U.S. at 273-74. Accordingly, Conklin has failed to satisfy the causation element of a prima facie case of First Amendment retaliation, and defendants' motion to dismiss with respect to this claim will be granted.

To the extent that Conklin believes that he can satisfy the causation element with evidence other than temporal proximity, the court will permit Conklin to seek leave to amend to add First Amendment retaliation claims against the prothonotary defendants. Any motion for leave to amend shall include the proposed amendments and shall be accompanied by a brief in support. Said brief shall include citations to applicable and controlling law demonstrating the validity of the added First Amendment retaliation claims given the proposed amendments.[16]

### C.   **Warrington Township Defendants**

The Warrington Township defendants allege that the claims against them are barred because Conklin asserted the same claims in a prior action before this court. The Township also alleges that the Monell claims against it should be dismissed for

---

[16] Having found that Conklin has failed to allege properly any § 1983 claims, the court need not address the subsequent issue of whether Conklin's rights were clearly established. See supra page 22 (discussing qualified immunity defense).

failure to allege a policy or custom that led to the purported constitutional

violations.  In the alternative, the Warrington Township defendants request a more

definite statement of Conklin's allegations against them.  See FED. R. CIV. P. 12(e).

The court will address these arguments *seriatim*.

### 1.     Prior Pending Action Rule

The prior pending action rule provides that a party does not have a "right to

maintain two separate actions involving the same subject matter at the same time

in the same court and against the same defendant."  Walton v. Eaton Corp., 563

F.2d 66, 70 (3d Cir. 1977) (citing United States v. Haytian Republic, 154 U.S. 118,

123-24 (1894)); see also McKenna v. City of Phila., No. 06-1705, 2007 WL 4190687, at

*2 (E.D. Pa. Nov. 21, 2007) ("The pendency of a prior pending action in the same

federal court is ground for abatement of the second action . . . .  There is no reason

why a court should be bothered or a litigant harassed with duplicating lawsuits on

the same docket . . . .").  The rule permits a court that becomes aware of duplicative

actions on its docket to consolidate the two actions, "dismiss [the] second complaint

without prejudice," or "stay[] proceedings in the second action until judgment [is]

entered in the first."  Eaton Corp., 563 F.2d at 70-71.

In the instant case, the prior action referenced by the Warrington Township

defendants is Conklin v. Warrington Township, No. 05-1707 (M.D. Pa.).  While the

prior action appears to involve the same subject matter and the same defendant as

the instant case, the prior action was resolved by this court by memorandum and

order dated November 30, 2007.  (See Doc. 89.)  Accordingly, two of the remedies

31

afforded by the prior pending action rule, namely, consolidating the two actions or
staying the instant action, are now moot.  This leaves only the remedy of dismissing
the instant action.  The court is unprepared to utilize such an extreme remedy at
this juncture.  While both the prior and the instant actions involve land use
decisions made by the Warrington Township defendants, the absence of allegations
of temporality in the instant amended complaint makes it impossible for the court
to ascertain when the causes of action underlying the instant case accrued and
whether they are identical to and duplicative of the causes of action asserted in the
prior action.  Therefore, the court must deny the Warrington Township defendants'
motion to dismiss to the extent it is premised on the prior pending action rule.

### 2.    Claims Against the Township

A local government entity may be held liable under § 1983 only if the plaintiff
can identify an official policy or custom that caused his or her injury.  Bd. of County
Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Social Servs.,
436 U.S. 658, 694 (1978)).  A policy is an official proclamation or edict of a local
government entity, while a custom is a practice that is "so permanent and well
settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971
(3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)
(citations omitted).  In the instant case, Conklin alleges only that Warrington
Township violated his *individual* constitutional rights by thwarting his subdivision
plan.  (See, e.g., Doc. 27 at 3, 8, ¶¶ 7-8); see also Rojas v. City of New Brunswick,
No. 04-3195, 2008 WL 2355535, at *20 (D.N.J. June 4, 2008) (citing Oklahoma v.

Tuttle, 471 U.S. 808 (1985)) ("A single unlawful act of an employee does not imply a policy, practice, or custom sufficient to impose liability under *Monell*."); Max v. City of Phila., 102 F. Supp. 2d 609, 611 (E.D. Pa. June 30, 2000) ("[A] single incident, without more, will rarely suffice to establish an official policy or custom."). Conklin does not allege that these actions were taken pursuant to a Township policy or that such actions were customary in the Township. Accordingly, the court will grant the Warrington Township defendants' motion to dismiss the federal claims against the Township.

To the extent that Conklin believes that he can allege a *specific* policy or custom of Warrington Township that led to his purported constitutional injuries, the court will permit Conklin to seek leave to amend to add Monell claims. Any motion for leave to amend shall include the proposed amendments and shall be accompanied by a brief in support. The brief shall include citations to applicable and controlling law demonstrating the validity of the added Monell claims given the proposed amendments.

### 3.    **Motion for a More Definite Statement**

The Warrington Township defendants' motion for a more definite statement requests that Conklin amend his complaint to establish the timing of the alleged constitutional violations. Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a more definite statement of a pleading . . . [that] is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). However, a motion for a more definite statement is

33

not a substitute for discovery and should not be used to seek information from the plaintiff beyond that which is necessary for the defendant to formulate a meaningful response.  See Witt v. Merrill Lyn, Pierce, Fenner & Smith, Inc., 602 F. Supp. 867, 869 (W.D. Pa. 1985).  The motion need not be granted as to ambiguities in pleadings that can be resolved during discovery unless they prevent a defendant from responding to the complaint.  Id.

With respect to a statute of limitations defense, the Federal Rules of Civil Procedure impose no burden upon a plaintiff to recite in his or her complaint the dates on which the alleged harms occurred.  See Jairett v. First Montauk Sec. Copr., 203 F.R.D. 181, 186 (E.D. Pa. 2001) (observing that the Federal Rules of Civil Procedure "do[] not require specificity in pleading time and place"); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1309 (3d ed. 2004) (stating that the Federal Rules "do[] not require the pleader to set out specific allegations of time and place," which are generally required only if "the statement of a claim is so vague and ambiguous that the other party cannot adequately frame an answer" without them).  Accordingly, the propriety of a statute of limitations defense is a potential subject for discovery, and the Warrington Township defendants may probe the chronological context of the allegations of the complaint at that time.  At present, the court finds that the absence of allegations of temporality does not prevent the Warrington Township defendants from formulating a meaningful response to the complaint.  Accordingly, the motion for a more definite statement will be denied.

34

D.      <u>State Law Claims</u>

Conklin relies on the court's supplemental jurisdiction pursuant to 28 U.S.C.

§ 1367(a) to assert state law claims of fraud and civil conspiracy against all

defendants.  Because federal claims either remain or may be reasserted against the

prothonotary and Warrington Township defendants, the court will continue to

exercise its supplemental jurisdiction over the state law claims against these

defendants at the present time.  However, all federal claims against the financial

institution and attorney defendants have been dismissed without leave to amend.

Relying upon its inherent authority to decline to exercise supplemental jurisdiction,

the court will dismiss the state law claims against these defendants without

prejudice.  See <u>Duvall v. Borough of Oxford</u>, No. 90-0629, 1992 WL 59163, at *5 (E.D.

Pa. Mar. 19, 1992) (declining to exercise supplemental jurisdiction over state law

claims asserted against group of defendants about which no federal claims

remained).

District courts may exercise supplemental jurisdiction over any state law

issue that is "so related to claims in the action within [the court's] original

jurisdiction that they form part of the same case or controversy."  28 U.S.C.

§ 1367(a).  However, the doctrine "does not permit courts to take jurisdiction over

tangentially related claims."  See <u>DeAsencio v. Tyson Foods, Inc.</u>, 342 F.3d 301, 308

(3d Cir. 2003) (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966)).

Congress has conferred on district courts the discretion to decline to exercise

supplemental jurisdiction when state law claims "substantially predominate" over

35

federal causes of action.  28 U.S.C. § 1367(c)(2).  Federal courts evaluate the

predominance of state claims by reference to three factors:  (1) the evidentiary proof

required to advance them, (2) the scope of issues that they raise, and (3) the

possibility that a defendant may be subjected to duplicative liability.  Mazurkiewicz

v. Doylestown Hosp., 223 F. Supp. 2d 661, 667 (E.D. Pa. 2002); see also Gibbs, 383

U.S. at 726-27; Borough of West Mifflin v. Lancaster, 45 F.3d 780, 787-90 (3d Cir.

1995) (interpreting Gibbs as an outline of the analytical framework applicable to a

court's discretionary exercise of supplemental jurisdiction).

    In the instant case, all three Gibbs factors counsel against the court's exercise

of supplemental jurisdiction.  Conklin's remaining federal claims concern the code-

enforcement activities of the Warrington Township defendants and the docket

management practices of the prothonotary defendants.  In contrast, the state law

claims against the financial institution and attorney defendants involve far-reaching

allegations of fraud and conspiracy, none of which involve the Warrington

Township or prothonotary defendants.  Accordingly, the state and federal claims at

issue involve distinct, non-coalescent evidentiary matters and legal issues.  See

Mazurkiewicz, 223 F. Supp. 2d at 667 (discussing the first two Gibbs factors,

namely, the evidentiary and legal parity of the claims at issue).  Moreover, the

court's refusal to hear the state claims at issue would not subject any defendant to

the threat of repetitive liability.  See Lancaster, 45 F.3d at 789 (discussing the third

Gibbs factor, namely, the possibility of exposing a defendant to duplicative liability).

Conklin may continue to pursue his civil rights claims against the Warrington

36

Township and prothonotary defendants in federal court to recover for his alleged constitutional injuries.  If he so chooses, he may also advance his tort claims against the financial institution and attorney defendants in state court.  There is no risk that Conklin would receive duplicate recovery from two lawsuits because he would be advancing distinct claims against different sets of defendants.

For the aforementioned reasons, the court will decline to exercise supplemental jurisdiction over Conklin's state law claims against the financial institution and attorney defendants.  The court will dismiss these claims without prejudice.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the court will dismiss all federal claims against the financial institution and attorney defendants for failure to allege state action.  The court will also dismiss all federal claims against the prothonotary defendants for failure to allege a violation of a clearly established right.  However, the court will permit Conklin to file a motion for leave to amend to reassert equal protection and First Amendment retaliation claims against these defendants.   With respect to the Warrington Township defendants, the court will dismiss the <u>Monell</u> claims against the Township but will permit Conklin to file a motion for leave to amend to remedy the deficiencies in his pleadings.  The Warrington Township defendants' motion will be denied in all other respects.  Finally, the court will decline to exercise supplemental jurisdiction over the state law claims against the financial institution and attorney defendants.

An appropriate order will issue.

_S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge

Dated:      July 7, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN G. CONKLIN,** | : | **CIVIL ACTION NO. 1:06-CV-2245** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | |
| **WARRINGTON TOWNSHIP,** | : | |
| **REBECCA KNAUB, PAMELA LEE,** | : | |
| **GREGORY GETTLE, EDWIN A.D.** | : | |
| **SCHWARTZ, PAUL LUTZ, CHASE** | : | |
| **BANK OF TEXAS, SAXON** | : | |
| **MORTGAGE CO., EMC, MERITECH** | : | |
| **MORTGAGE CO., DEUTSCH BANK,** | : | |
| **LEON HALLER, DAVID DOE,** | : | |
| **SUE DOE,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 7th day of July, 2008, upon consideration of defendants'

motions to dismiss the amended complaint (Docs. 39, 41, 42, 44, 61, 71), and for the

reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  The motions to dismiss filed by defendants Chase Bank of Texas,
    Saxon Mortgage Co., Meritech Mortgage Co., EMC, Edwin A.D.
    Schwartz, Leon Haller, and Paul Lutz (Docs. 39, 41, 44, 71) are
    GRANTED as follows:

    a.  All federal claims against the aforementioned defendants are
        DISMISSED.

    b.  Leave to amend is denied as futile. See Grayson v. Mayview
        State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

    c.  The court declines to exercise supplemental jurisdiction over
        the state law claims asserted against the aforementioned
        defendants. See 28 U.S.C. § 1367(a).

2.      The motion to dismiss (Doc. 42) filed by defendants Pamela Lee,
        Gregory Gettle, David Doe, and Sue Doe is GRANTED.  All federal
        claims against these defendants are DISMISSED.

3.      The motion to dismiss (Doc. 61) filed by defendants Warrington
        Township and Rebecca Knaub is GRANTED in part and DENIED in
        part as follows:

        a.      The motion (Doc. 61) is GRANTED with respect to the <u>Monell</u>
                claims asserted against defendant Warrington Township
                pursuant to 42 U.S.C. § 1983.  All federal claims against this
                defendant are DISMISSED.

        b.      The motion (Doc. 61) is DENIED in all other respects.

4.      Plaintiff shall be permitted to file a response showing good cause, on
        or before July 18, 2008, for his failure to effectuate service upon
        defendant Deutsche Bank.  Absent such a filing, all claims against
        defendant Deutsche Bank will be dismissed without prejudice.

5.      Plaintiff shall also be permitted to file, on or before July 18, 2008, a
        motion for leave to amend **and a brief in support thereof** to reassert
        <u>Monell</u> claims against defendant Warrington Township and equal
        protection and First Amendment retaliation claims against defendants
        Pamela Lee, Gregory Gettle, David Doe, and Sue Doe.  However, any
        such motion shall include the proposed amendments.  The brief in
        support shall include citations to applicable and controlling law
        demonstrating the validity of the <u>Monell</u>, equal protection, and/or First
        Amendment retaliation claims given the proposed amendments.
        Absent such a filing, this case will proceed on the remaining claims.

6.      A case management conference shall be scheduled by future order of
        court.

    _S/ Christopher C. Conner_____
    CHRISTOPHER C. CONNER
    United States District Judge