IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN G. CONKLIN, | : | CIVIL ACTION NO. 1:06-CV-2245 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| WARRINGTON TOWNSHIP, REBECCA KNAUB, PAMELA LEE, GREGORY GETTLE, DAVID DOE, and SUE DOE, | : | |
| Defendants | : | |

# MEMORANDUM

This is a § 1983 action instituted by plaintiff Stephen G. Conklin ("Conklin") against the following defendants: (1) Warrington Township and Rebecca Knaub ("Knaub"), a Warrington township zoning official; and (2) Pamela Lee ("Lee"), Gregory Gettle ("Gettle"), David Doe, and Sue Doe, all of whom are employees of the York County Prothonotary's Office (the "prothonotary defendants"). Conklin seeks to hold defendants liable for retaliating against him in violation of his First Amendment right to petition the government for redress of grievances, and for violating his Fourteenth Amendment rights to substantive and procedural due process and equal protection. (See Doc. 27 at 33.) By an order of court dated July 7, 2008, each of Conklin's federal claims against the prothonotary defendants was dismissed. (Doc. 85 ¶ 2.) By the same order, the court dismissed Conklin's Monell claims, which he raised against Warrington Township and Knaub. (Id. ¶ 3a.) The court permitted Conklin to seek leave to amend his complaint if he wished to reassert these claims. (Id. ¶ 5.) Presently before the court is Conklin's motion

seeking leave to amend his amended complaint (Doc. 90). For the reasons that follow, Conklin's motion will be granted in part and denied in part.

I.  **Statement of Facts**[1]

Conklin owns over one hundred acres of real property situated in Warrington Township, York County, Pennsylvania (the "Warrington Property"). (Doc. 27 at 2, ¶ 16.) In 1997, Conklin secured a mortgage on the Warrington Property, but by the following year, he had fallen into arrears on the mortgage. (Id. at 2, ¶¶ 17-18.) Shortly thereafter, Conklin filed a bankruptcy petition. (Id. at 2, ¶ 21.) To alleviate some of his financial difficulties, Conklin sought to subdivide the Warrington Property, anticipating that a sale of the most valuable three acres of land would generate enough income to eliminate his arrearages. (Id. at 2-3.) Ultimately, Conklin hoped to develop a subdivision plan that would facilitate the sale of parcels sufficient to satisfy his entire mortgage debt. (Id.)

  A.  **Alleged Wrongdoing by Warrington Township and Rebecca Knaub**

Conklin commissioned a survey of the Warrington Property, which he filed with Warrington Township, along with a conditionally approved subdivision plan. (Id. at 4.) When Conklin later attempted to move forward with the subdivision plan, he "was told by Warrington Township officials that he needed to 'get a fresh signature and stamp' and update his subdivision application." (Id.; see also id. at 8

---

[1] The court will present the facts as alleged in the amended complaint (Doc. 27) and plaintiff's motion for leave to amend (Doc. 90). The characterization of the facts reflects neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

("Rebecca Knaub . . . repeatedly emphasized to the plaintiff that he needed to get a fresh signature and a new stamp on his survey.")). Conklin asserts that he had no legal obligation to "update" his application and that this "false directive thwarted [his] efforts to avoid a sheriff's sale and the subsequent loss of his real estate." (Id. at 4.) According to Conklin, Knaub's "false directive" constitutes a due process and equal protection violation. (See id. ¶¶ 7-8.)

On July 7, 2008, the court granted Warrington Township's motion to dismiss Conklin's federal claims. (See Doc. 85 ¶ 3a.) However, the court granted Conklin permission to seek leave to amend his Monell claims against the township. (Id. ¶ 5.) The court advised Conklin that in order to assert cognizable Monell claims, he must assert specific municipal policies or customs, the implementation of which caused Conklin's constitutional injuries. (Id. Part III.C.2.) Conklin submitted a motion seeking leave to amend his complaint on August 8, 2008. (Doc. 90.) The motion contains eighteen paragraphs of factual averments, intended to bolster the previously defective Monell allegations. (See id. at Ex. B.)

Conklin now specifically alleges that Knaub's position as a Warrington Township official comprised various policymaking powers, which she exercised in an "arbitrary and capricious manner to deny [Conklin] his constitutional rights." (Id. ¶ 54b.) According to Conklin, Knaub sent him him "on a [sic] unlawful 'wild-goose-chase' to obtain a fresh signature from the original surveyor," despite her knowledge that such signatures were unnecessary. (Id. ¶ 54c.) Additionally, Conklin claims that Warrington Township colluded with various state agencies,

3

including the Pennsylvania Department of State, the Office of the Attorney General, the Pennsylvania Department of Health, the Pennsylvania Department of Environmental Protection, and the Pennsylvania State Police, to repeatedly and intrusively inspect Conklin's property.[2] (Id. ¶¶ 54j, 54l-54p.) Conklin never describes what constitutional injury he suffered as a result of these inspections, nor does he identify the municipal policy or custom responsible for his purported constitutional injuries.

### B. Alleged Wrongdoing by the Prothonotary Defendants

Conklin also alleges that individual employees of the York County Prothonotary's Office, namely Lee, Gettle, David Doe, and Sue Doe, retaliated against him in violation of his First Amendment right to petition the government and violated his right to equal protection. After naming Lee and Gettle as defendants in a November 2006 civil suit, Conklin claims that in January 2007, the prothonotary's office intentionally failed to docket certain court documents that he properly filed. (Id. ¶¶ 61-126.) The docket management errors allegedly occurred in both the above-captioned matter, and in related matters in which Conklin was a

---

[2] Conklin also claims that Warrington Township selectively summoned parties unfavorable to Conklin's interests for a May 2003 cease and desist hearing concerning his property and that it "fomented spurious and scandalous disinformation about Conklin to individuals in the community." (See Doc. 90 at Ex. B ¶¶ 54g-54h.) Conklin does not claim that these actions are illustrative of any specific municipal policy, but simply describes them as isolated incidents, seemingly unconnected to the factual averments upon which his complaint is based. It is unclear to the court what Conklin is attempting to claim by averring these facts, and these incidents appear to possess marginal relevance at best.

party.  (See id.)  Conklin claims that this treatment was both retaliatory and violative of the Fourteenth Amendment Equal Protection Clause.  (Doc. 27 at 33.)

On July 7, 2008, the court dismissed the claims asserted against the prothonotary defendants.  (Doc. 85 ¶ 2.)  However, the court granted Conklin permission to seek leave to amend his First Amendment and equal protection claims.  (Id. ¶ 5.)  With respect to the latter, the court allowed Conklin to submit allegations describing a specific instance in which the prothonotary defendants treated similarly situated individuals differently than they treated Conklin.  (See id. Part III.B.2.b.)  Conklin was permitted to supplement his First Amendment averments with evidence suggesting that the January 2007 docket management errors were caused by Conklin's protected First Amendment activity—specifically, the filing of his complaint in November 2006.  (See id. Part III.B.2.c.)  Conklin sought leave to amend on August 8, 2008.  (Doc. 90.)  The motion contains twenty-four averments intended to amplify his previous allegations of First Amendment and equal protection violations.  (See id. at Ex. A.)

Conklin's proposed amendments contain no contentions that either Lee, Gettle, David Doe, or Sue Doe treated similarly situated individuals differently than Conklin was treated.  Furthermore, Conklin presents no additional allegations indicating that the docket management errors in January 2007 were an attempt to retaliate against him for the filing of his November 2006 complaint.  Rather, Conklin reaches back further in time, to August 2006, in order to make out his case of unconstitutional retaliation.  Around that time, Conklin claims that he was

5

participating in state court litigation against Paul Lutz ("Lutz").[3] Conklin asserts that on August 7, 2006, he attempted to file a motion to stay that proceeding, but that Lee and Gettle colluded with Lutz's attorney, Edwin Schwartz, to prevent Conklin's motion from appearing on the docket.[4] (See id. ¶¶ 50l-50s.) Conklin contends that this failure to docket his motion for a stay of proceedings unlawfully obstructed his right to fairly litigate the matter against Lutz. (See id. ¶ 50s.)

## II. Legal Standard

Federal Rule of Civil Procedure 15(a) allows the court to grant a party leave to amend his or her pleading "when justice so requires." FED. R. CIV. P. 15(a)(2). This rule affords district courts broad discretion to permit amendments in order to ensure that a case is properly decided on the merits, as opposed to pleading technicalities. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Pa. Employees Benefit Trust Fund v. Zeneca, Inc., 499 F.3d 239, 252 (3d Cir. 2007). A court applying Rule 15(a) should exercise its discretion liberally, see Phillips v. Borough

---

[3] Lutz was previously named as a defendant in the above-captioned matter, but all claims against him were dismissed by the order of court dated July 7, 2008. (See Doc. 85.)

[4] Conklin alluded to these events in his amended complaint, but did so in extremely ambiguous terms. For example, Conklin alleged that the prothonotary defendants intentionally failed to "docket[] properly filed documents, which if properly filed, would have resulted in plaintiff's right to a hearing regarding unlawful conduct." (Doc. 27 ¶ 9.) He also asserted that Schwartz, Lee, and Gettle "engaged in unlawful actions with others to deny plaintiff his right to utilize the court system." (Id. ¶ 50.) These are the only two averments in Conklin's amended complaint that refer to the events upon which he bases his First Amendment violations.

of Keyport, 179 F.R.D. 140, 143-44 (D.N.J. 1998) (emphasizing Rule 15(a)'s mandate that amendments are to be granted "freely"); absent any apparent bad faith, dilatory motive, undue delay on the part of the movant, prejudice to the non-movant, or obvious futility of the proposed amendments, a party should be permitted leave to amend.  Foman, 371 U.S. at 182; Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998).

**III.     Discussion**

    **A.     Monell Claims**

Municipalities may be held liable for § 1983 violations only if a plaintiff can identify an official policy or custom that caused his or her injury.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A policy is an official proclamation or edict of a local government entity, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)) (citations omitted).  To demonstrate municipal liability, a plaintiff must establish that the enforcement of the municipal policy or custom was the "moving force" underlying the violation of his or her federally protected right.  See City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

The court granted Conklin permission to seek leave to amend his Monell claims against Warrington Township.  Conklin was instructed to specify a particular municipal policy or custom that resulted in constitutional injury.  (See Doc. 85 Part III.C.2.)  Conklin's proposed amendments fail to identify such a policy

7

or custom. Rather, Conklin asserts that Warrington Township conspired with various state agencies in order to harass him. By way of example, Conklin points to instances in which the Pennsylvania Department of State, the Office of the Attorney General, the Pennsylvania Department of Health, and other state agencies appeared at his home to inspect his property.[5] (See Doc. 90 at Ex. B ¶¶ 54j, 54l-54p.)

Conklin's allegations, which focus on the behavior of state officials working for state agencies, are nothing more than tilting at windmills. Even if such harassment occurred, it is entirely irrelevant to Conklin's Monell claims against Warrington Township. Municipal liability attaches only to the municipality's behavior, and Monell liability does not arise as the result of state action. See Quern v. Jordan, 440 U.S. 332, 338 (1979) (holding that Monell liability is "limited to local government units which are not considered part of the State"); see also Bolden v. Se. Pa. Transp. Auth., 953 F.2d 807, 813-14 (3d Cir. 1991) (describing the jurisprudential difference between state liability under § 1983 and Monell liability, which results from unconstitutional municipal behavior). Conklin has not alleged that the state officers acted pursuant to a Warrington Township policy or custom;

---

[5] Conklin claims that on multiple occasions a Warrington township zoning officer accompanied officials from the Department of Environmental Protection and the York County Conservation Office on inspections. (Doc. 90 at Ex. B ¶ 54m-54n.) The allegation that a municipal officer merely accompanied a state official during a property inspection is insufficient to correct Conklin's previously deficient Monell claim. Even if this official's "presence" were enough to establish individual liability, the Supreme Court has consistently rejected the doctrine of *respondeat superior* in the context of Monell claims. See City of St. Louis v. Praprotnik, 485 U.S. 112, 121-22 (1988).

the logic underlying his proposed amendments seems to imply that state wrongdoing may be imputed to Warrington Township, a legal proposition that is wholly unsupported. See Praprotnik, 485 U.S. at 118 (holding that a municipality may be liable only for acts that it has "officially sanctioned or ordered"). Thus, Conklin's attempt to allege a specific injury-causing policy or custom is legally insufficient on its face. Leave to amend will be denied as futile. See In re Merck & Co., Inc., 493 F.3d 393, 400 (3d Cir. 2007) ("Futility is also a sufficient ground to deny leave to amend."); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Conklin does include additional averments contending that Knaub possesses municipal policymaking powers and that she wielded these powers when she told Conklin to obtain additional signatures before his subdivision plan could be completed. (See Doc. 90 at Ex. B ¶¶ 54a-54c.) Under Monell, a municipality may incur liability for an employee's constitutional torts if that employee "has policy making authority rendering his or her behavior an act of official government policy." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)). The ability to make policy "is necessarily the authority to make final policy," and this is a question of state law. See Praprotnik, 485 U.S. at 126-27; see also id. at 118-19. In the instant matter, Conklin has not alleged that Knaub's policymaking authority is final, or that Pennsylvania state law vests a township official in her position with such authority.

In light of the liberal amendment policies embodied in Rule 15(a), however, the court will grant Conklin permission to amend his complaint to add a Monell

9

claim deriving from Knaub's purported obstruction of Conklin's subdivision plan. The extent of Knaub's policymaking power, and whether her actions may properly be characterized as an injury-causing municipal policy, was a contention not fully briefed by the parties or heretofore considered by the court.  Consequently, the court will allow Conklin to amend his complaint and present these allegations.  The court will limit the amendment as follows:[6] (1) Conklin may add paragraphs 54a through 54d from Exhibit B, which is currently appended to Document 90, and; (2) Conklin may elaborate on the allegations to describe the scope of Knaub's policymaking powers.  Conklin will not be permitted to amend his complaint to add additional Monell claims.

### B.     Equal Protection Claims

The court granted Conklin permission to seek leave to amend his previously defective equal protection claim by alleging a "*specific* instance or instances in which similarly situated individuals were treated differently than he was by the prothonotary defendants."  (See Doc. 85 Part III.B.2.b; see also id. ¶ 5.)  Conklin submitted twenty-four proposed factual averments, allegedly supportive of this claim.  (See Doc. 90 at 1.)  Not one of these averments presents factual contentions describing a specific instance when similarly situated individuals received

---

[6] When district courts grant leave to amend, they possess authority to impose conditions upon the terms of amendment.  See 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1486 (2d ed. 1990).

treatment different from that which Conklin received.[7]  Thus, leave to amend on this issue will be denied.

### C.     First Amendment Retaliation Claims

Finally, Conklin was permitted to seek leave to amend his contention that the prothonotary defendants unconstitutionally retaliated against him in violation of the First Amendment.  (See Doc. 85 ¶ 5.)  Conklin's original retaliation claims—which the court found defective—averred that he filed a November 2006 complaint in the prothonotary's office, naming Lee and Gettle as defendants.  Thereafter, in January 2007, Lee, Gettle, and prothonotary employees David and Sue Doe purportedly mismanaged items that Conklin attempted to docket.  (See Doc. 27 ¶¶ 61-126.)  In its order dismissing his amended complaint, the court found Conklin's evidence of retaliatory causation lacking, and permitted him to amend with additional causation evidence.  (See Doc. 85 Part III.B.2.c.)

Conklin's twenty-four proposed amendments do not address the period between November 2006 and January 2007; thus, it appears that Conklin has forfeited the grounds upon which he previously staked his retaliation arguments.  However, Conklin contends that Lee and Gettle intentionally mismanaged an application for a stay of proceedings, which Conklin allegedly filed in August 2006, in unrelated litigation with Lutz.  (See Doc. 90 at Ex. A ¶¶ 50g, 50r-50s.)

---

[7] Conklin also neglected to address the equal protection issue in his brief in support of the motion for leave to amend.  (See Doc. 91.)

In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that he or she engaged in conduct or speech protected by the First Amendment; (2) that the government responded in a retaliatory manner; and (3) that the protected activity was the cause of the government's retaliation.  See Eichenlaub v. Twp. of Ind., 385 F.3d 274, 282 (3d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Although Conklin's retaliation claim is not a model of clarity, he presumably invokes the filing of the stay request as the protected activity from which his First Amendment claim arises.[8]  Furthermore, by removing the stay from the docket after Conklin had filed it, Conklin argues that Lee and Gettle committed an act of retaliation.

Conklin's proposed amendments do not represent information that was unavailable to him at the time he filed his original complaint in November 2006, or at the time he amended that complaint in January 2007.  Given the liberal amending standard set forth in Rule 15(a), the court nonetheless finds that Conklin should be permitted leave to amend.  In this posture, the court must weigh the hardship imposed upon the movant if denied leave to amend against the injustice resulting to the defendants if leave is granted.  See WRIGHT, § 1487, at 621-23.  Although Conklin has offered no justification for his failure to allege the proposed facts from the outset, allowing him to do so now will not alter the nature of the

---

[8] Conklin's brief in support of his motion to amend his amended complaint also appears to argue that a motion for a stay of proceedings constitutes protected First Amendment activity.  (See Doc. 91 at 4.)

claims he asserts against Lee and Gettle, and Conklin's theory of relief will remain rooted in First Amendment retaliation analysis.  See Downey v. Coal. Against Rape & Abuse, Inc., 143 F. Supp. 2d 423, 436 (D.N.J. 2001) (granting leave to amend when the plaintiff's proposed amendments merely elaborated on previously claimed theories, and did not present a new cause of action); see also Cuffy v. Getty Ref. & Mktg. Co., 648 F. Supp. 802, 806 (D. Del. 1986) (holding that although a plaintiff should plead all facts necessary to a claim at the outset, failure to do so is not dispositive in the court's Rule 15(a) analysis).  Furthermore, discovery has not progressed to the point where granting leave to amend will require expensive document production or further depositions.  In short, Lee and Gettle will suffer little added expense; a denial, however, would terminate Conklin's claim without fully exploring its merits.

In light of these considerations, the court will grant Conklin leave to amend his First Amendment retaliation claim against Lee and Gettle.  Conklin is permitted to add paragraphs 50g through 50s from Exhibit A, which is currently appended to Document 90.  Conklin will not be permitted to amend his complaint to add additional First Amendment claims, including any claims against David Doe or Sue Doe.[9]

---

[9] Conklin's proposed amendments do not mention any actions taken by David Doe or Sue Doe.  Therefore, it appears Conklin has willingly abandoned his claims against these two defendants.

**IV.     Conclusion**

For the foregoing reasons, Conklin will be permitted to amend his complaint to assert § 1983 violations caused by Rebecca Knaub's allegedly obstructionist behavior, as well as First Amendment injuries resulting from Pamela Lee and Gregory Gettle's alleged docket management errors in August 2006.

An appropriate order will issue.

S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:        November 20, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN G. CONKLIN**, | : | CIVIL ACTION NO. 1:06-CV-2245 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **WARRINGTON TOWNSHIP,** **REBECCA KNAUB, PAMELA LEE,** **GREGORY GETTLE, DAVID DOE,** and **SUE DOE,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 20th day of November, 2008, upon consideration of plaintiff's motion (Doc. 90) seeking leave to amend his amended complaint (Doc. 27), as well as defendants' briefs in opposition thereto (Docs. 92, 93), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1.  Plaintiff's motion (Doc. 90) to amend is GRANTED in part and DENIED in part as follows:

    a.  The motion (Doc. 90) is GRANTED with respect to plaintiff's request to amend his Monell claims asserted against defendant Warrington Township and Rebecca Knaub pursuant to 42 U.S.C. § 1983. Plaintiff shall be permitted to amend his complaint (Doc. 27) on or before December 19, 2008 as follows:

        i.  Plaintiff may add Paragraphs 54a through 54d from Exhibit B, which is currently appended to Document 90.

        ii. Plaintiff may elaborate on the allegations currently contained in Paragraphs 54a through 54d, but only to the extent necessary to amplify factual allegations concerning the scope of defendant Rebecca Knaub's municipal policymaking powers.

      b.      The motion (Doc. 90) is GRANTED with respect to plaintiff's request to amend his First Amendment retaliation claims asserted against defendants Pamela Lee and Gregory Gettle. Plaintiff shall be permitted to amend his complaint (Doc. 27) to add Paragraphs 50g through 50s from Exhibit A, which is currently appended to Document 90.

      c.      The motion is DENIED in all other respects.

2.      Aside from the second amended complaint as described hereinabove, no further amendments to plaintiff's complaint will be permitted absent a showing of compelling circumstances.

3.      A revised pretrial and trial schedule shall issue by future order of court.

                                      S/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge